## HIBNER v. FLEETWOOD.

[No. 2,384.    Filed February 25, 1898.]

SLANDER.—*Complaint.—Sufficiency.*—A complaint for slander charging that defendant, with malicious intent to ruin plaintiff's good name, said· of her in the presence of others, that she was going to have a miscarriage, and that she had a miscarriage when she had the measles, stated a cause of action, where it is alleged that plaintiff was an unmarried woman, and that the parties to whom the words were spoken knew that she was unmarried, and which further alleges that defendant intended to charge plaintiff with the crime of fornication, and was so understood by the parties who heard her.  *pp. 421-424.*

SAME.—*Instruction.—Assumption as to Character.*—In an action for slander charging plaintiff, an unmarried woman, with having a miscarriage, no error was committed in instructing the jury that if they found for plaintiff they might consider the extent of injury believed by them to have been done to plaintiff's name and fame as a virtuous woman, although a number of witnesses, for the purpose of mitigating the damages, testified that plaintiff's moral character was bad, and almost an equal number testified that it was good.  Henley and Wiley, JJ., dissenting.  *pp. 425, 426.*

From the Jackson Circuit Court.    *Affirmed.*

*Oscar H. Montgomery* and *James T. Arbuckle,* for appellant.

*Bart H. Burrell* and *Frank Branaman,* for appellee.

HENLEY, J.—This was an action of slander, brought by appellee against appellant.    The complaint was in three paragraphs.    The second paragraph of complaint was, upon motion, stricken out.    The first paragraph of complaint alleged that appellant on the 22nd day of March, 1896, at Jackson county and State of Indiana and divers other times before and after that date, with the malicious intent to ruin appellee's good name and reputation, and for the purpose of bringing her into public disgrace and scandal, and in the presence of divers persons, spoke of and concerning appellee, the following words: "Fannie

(plaintiff meaning) is pretty bad off. She is going to have a miscarriage. Dr. Kyte is going to be her doctor for I went after him." That appellant meant to charge by said language that appellee was pregnant with a child, and was going to prematurely be delivered of it, and charging and intending to charge, and it was so understood by those who heard it, that appellee was guilty of the crime of fornication; that appellant also spoke of and concerning appellee the following words: "Fannie (plaintiff meaning) is pretty bad off, something worse than the measles; she is going to have a miscarriage. Dr. Kyte is going to be her doctor for I went after him, and I tried to tell him where she lived and he said 'Oh yes, I know, down on Laura street by Nels McDonald's office. I waited on her last fall when she had a miscarriage.'" That appellant meant and was so understood to mean by those to whom she was speaking that appellee had been delivered of a bastard child and was then pregnant with child and was going to be delivered of the same and that appellee was guilty of the crime of fornication. And it is further alleged that appellee was an unmarried woman at the time of the speaking of said words and had never been married, and that the persons to whom the same were spoken knew that she was unmarried; that appellant knew the words so spoken were false, and that appellant spoke them of appellee falsely, wickedly, and maliciously.

The third paragraph of complaint is short and is as follows: "The plaintiff, for third and further paragraph of complaint complains of the defendant and says: That plaintiff is an unmarried woman and that she has never been married; that on the 22nd day of March, 1896, and at divers other times before and after said date, the defendant spoke of and concerning plaintiff the following false and slanderous

words to —— and divers other persons to wit: (1) 'Fannie (plaintiff meaning) is going to have a miscarriage;' also (2) 'Fannie Fleetwood is going to have a miscarriage;' also (3) 'Fannie (plaintiff meaning) had a miscarriage 'when she had the measles.' Also (4) 'Fannie Fleetwood had a miscarriage when she had the measles.'

"That defendant thereby intended to charge the plaintiff with the crime of fornication, she being an unmarried woman, and the persons to whom she spoke said words and in whose presence they were spoken, knew plaintiff was an unmarried woman and had never been married, and defendant was understood to mean by those to whom she was talking, to charge plaintiff with being pregnant with child and that she was guilty of fornication. All of which false and slanderous words were spoken of plaintiff by the defendant for the malicious and slanderous purpose of injuring plaintiff's good name, by reason of which plaintiff was injured in her good name and reputation to her damage, etc." Appellant demurred to both paragraphs of complaint and to each set of the words alleged to be slanderous. The demurrer was overruled, appellant then answered the complaint by a general denial, and, upon the issues thus joined, there was a trial by jury and verdict and judgment in favor of appellee for $500.00. Appellant moved for a new trial, which was refused. The assignment of errors in this cause call in question the correctness of the rulings of the lower court in overruling the appellant's demurrer to the first and third paragraphs of complaint and in refusing to grant appellant a new trial.

We are of the opinion that the lower court properly overruled appellant's demurrer to each set of words alleged to have been spoken, and that both para-

graphs of complaint stated facts sufficient to consti-
tute a cause of action. It is directly averred that ap-
pellee was at the time of the speaking of the alleged
slanderous words an unmarried woman; that she had
always been unmarried; that the parties to whom
the words were spoken knew she was an unmarried
woman. No one could have heard the words spoken,
or either set of words alone, without forming the im-
pression, and the one impression alone, and that is
that appellee was pregnant with a bastard child, and
consequently guilty of the crime of fornication under
our law. The complaint is made stronger by the
allegation that appellant intended to charge, and was
so understood by the parties who heard her, to charge
appellee with the crime of fornication. It is further
explicitly alleged that the words were spoken ma-
liciously, and with the intent to injure appellee.
What we have said applies equally to both the first
and third paragraphs of complaint.

We come now to the discussion of an alleged error
of the lower court in overruling appellant's motion
for a new trial. Twelve reasons are assigned in the
motion for a new trial. It is urged by counsel for ap-
pellant, that the damages assessed by the jury are
excessive. We are not inclined so to hold. If the
jury believed that the words alleged to have been
spoken of the appellee were in fact spoken, and
spoken falsely and maliciously, the amount is far
short of an adequate compensation to the injured
party, and a light punishment for the offense of cir-
culating such slanderous reports.

It is also contended that the verdict of the jury
is not sustained by sufficient evidence. We have
carefully read all the evidence in the cause, and,
while the same is in some respects very unsatisfac-
tory, there was evidence, which if the jury believed

to be true, would justify them in returning the verdict which they did return.    We will not disturb the verdict of the jury where the evidence upon material points is conflicting.

It is next contended by appellant that the lower court erred in permitting the witness Jennie Able, a, witness called by appellee, to answer over appellant's objection the following question:    Question.    "I wish you would state just what she (appellant) said to you?"    Before answering the question the witness had been asked if she had had a conversation with appellant, and when that conversation took place.    She had answered that the conversation was on the 22nd day of March, 1896, and in answer to the question objected to, proceeded to detail a conversation with appellant in which the appellant used the language charged in the complaint to have been used by her on that date, and corresponding with one of the sets of slanderous words set out in the complaint.    This was part of appellee's case, and we know of no reason why the witness should not have been permitted to answer the question.    For the same reason, the objection to the question propounded to the witnesses Mattie Foiste and Joseph Richardson was properly overruled.

Passing over instructions numbered one, four, five, and eight, all of which were objected to by appellant, we come to instruction number nine given to the jury by the court, and objected to by appellant, which is as follows:    "If you determine from the evidence that the plaintiff's complaint is made out by a fair preponderance, your duty is to find for the plaintiff and assess her damages.    If you find that way you may consider in assessing the damages, the extent of injury you believe was done to plaintiff's name and fame as a virtuous woman, and if you determine that

the slanderous words were uttered and published deliberately and with malice you may also add exemplary damages in such sum as you all determine upon as right under all the facts and circumstances established."

This instruction the writer, speaking for himself, believes to be radically wrong. It assumes that appellee was a virtuous woman, in the face of the fact that ten or twelve witnesses upon the trial of this cause testified that appellee's general moral character was bad. Upon the other hand almost an equal number of persons testified that her general moral character was good. Then it became an issue of fact for the jury to determine. The error in assuming that appellee was a virtuous woman is not cured by the first sentence of the instruction, because it was not necessary for appellee to allege and prove, in order to maintain her action, that she was a virtuous and chaste woman. She did not allege it in her complaint and did not attempt to prove it upon the trial; it was unnecessary for her to do so; it was not material to her action. Appellant's answer to this action was a general denial, and appellee's character was attacked under that answer for the purpose of mitigating the damage if the jury should find that the words had been spoken as charged in the complaint. The instruction contains the unwarranted assumption of the truth of a fact to be found by the jury from the evidence, and should not have been assumed. to have been true in the instruction, even though the court may have believed so. *Heckelman* v. *Rupp*, 85 Ind. 286; *Scott* v. *State*, 64 Ind. 400; *Steele* v. *Davis*, 75 Ind. 191.

The majority of the court, however, believes that the lower court properly so instructed the jury and find no error in the record. Judgment affirmed.

WILEY, J.—I concur with Henley, J., in holding that the giving of the ninth instruction was error, for which the judgment should be reversed.